[L.A. No. 30516. Aug. 3, 1976.]

SAIDUL Z. CHOUDHRY et al., Petitioners, v.
HARRY M. FREE, Individually and as County Clerk, etc.,
Respondent;
IMPERIAL IRRIGATION DISTRICT et al., Real Parties in Interest.

**COUNSEL**

James E. Gonzales II, Ronald T. Vera, Albert H. Meyerhoff, Robert M. Teets, Jr., Richard Pearl and Fred Altshuler for Petitioners.

S. Wyanne Bunyan as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

R. L. Knox, Jr., and Horton, Knox, Carter & Foote for Real Parties in Interest.

Kenneth A. Kuney and Berryhill, Kuney & Burckhardt as Amici Curiae.

## OPINION

**MOSK, J.**—Section 21100 of the Water.Code provides that the director of an irrigation district formed under the Irrigation District Law (Wat. Code, § 20500 et seq.)[1] must be a freeholder of the district which he represents. Petitioner Choudhry, a potential candidate for director of the Imperial Irrigation District (hereinafter the district) at the time of filing this litigation, and two voters in the district, none of whom own real property therein, challenge the constitutionality of the section on the grounds that it violates article I, section 22, of the California constitution[2] and the equal protection clause of both the United States Constitution and the California Constitution. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)

Choudhry, a resident and voter of the district, sought to file a nominating petition for director in August 1975, but respondent Free, the county. clerk, refused to accept the petition on the ground that Choudhry was not a freeholder. Thereafter, petitioners sought a writ of mandate from this court, to compel Free to accept the nominating papers for filing.[3] We· issued an alternative writ to examine the claim that section 21100 is unconstitutional.[4]

Neither respondent nor the real parties in interest oppose petitioners' assertion that section 21100 is unconstitutional. Their apparent willingness to jettison the provision virtually eliminates all adversary aspects to this litigation. However, the Association of California Water Agencies, an organization which represents 69 of the state's 104 irrigation districts, has filed an amicus curiae brief in defense of the constitutionality of the section. The Secretary of State, expressing her interest in voting qualifications, appears as amicus curiae in support of petitioners.

The formation of an irrigation district may be initiated by the filing of a petition signed by a majority in number and value of the holders of title to land susceptible of irrigation, or by not less than 500 electors of the proposed district, who hold at least 20 percent of the value of the

---

[1]All references will be to the Water Code unless otherwise noted.

[2]Article I, section 22, of the California Constitution provides that the right to vote or hold office may not be conditioned by a property qualification.

[3]Petitioners also joined the district and its directors as real parties in interest in this proceeding.

[4]Petitioners also sought an order compelling Free to place Choudhry's name on the ballot pending our determination in this proceeding; we did not grant this request.

land. (§ 20700.) Whether or not he owns land therein a resident who qualifies as an elector is entitled to vote on the question of establishment of the district as well as for the selection of a director. (§ 20527.)

The board of directors is charged with conducting the affairs of the district (§ 21385), and among the powers which it may exercise are the following: It may supply and deliver water for irrigation and domestic use (§ 22075 et seq.) and for fire protection (§ 22077), and store, treat and salvage water (§ 22078). It may also produce, purchase or lease electric power and acquire or construct works for generating electricity (§§ 22115-22122). In addition, it is authorized to provide for drainage made necessary by irrigation (§§ 22095-22099), construct, maintain, and operate flood control and sewage disposal works (§§ 22160, 22162, 22176),[5] and construct, maintain, and operate recreational facilities in connection with dams, reservoirs and other property under its control (§ 22185). It has such general powers as eminent domain and the power to enter into contracts and to sell or lease its property (§§ 22456, 22230, 22500).

The district derives its revenues from assessments upon the land within its boundaries (§ 22950) and from charges for the services it provides, such as water, electric power, sewage disposal, and the operation of recreational facilities (§§ 22252, 22115, 22117, 22179, 22186). It has the authority to substitute such charges for assessments (§ 22280) and may pay its bonds from revenues other than assessments (§§ 25240, 25241), if the issuance of the bonds is authorized by an election (§ 21933). Bond elections may be called at the discretion of the board (§ 21925, subd. (a)).

According to petitioners, the Imperial Irrigation District is the largest in the state, with 501,265 acres of irrigated farm land and more than 1 million acres of total area. It supplies all the water and electrical power needs of Imperial County, and to portions of Riverside and San Diego Counties; the residents of that vast area have no practical alternative to the district as a source of water and power. The district is the second largest employer in Imperial County, with a work force of almost 1,000 full-time employees and an annual $13 million payroll, the largest in the county. Imperial County, which contains only a portion of the district's residents, has a population of 74,000, 67 percent of whom live in urban

---

[5]The operation of a sewage disposal system must be authorized by a majority vote of the electors (§ 22170), and the power to operate flood control works is limited to districts with 200,000 acres or more (§ 22162).

areas. According to amicus curiae, there are 100,000 urban residents in the entire district. Only about half of the housing units in the county are occupied by owners.

■ Petitioners' primary contention is that section 21100 denies them equal protection of the laws because it prohibits Choudhry from seeking the public's suffrage and restricts the right of choice of the two petitioners who are voters. As is customary in deciding claims made on equal protection grounds, our first inquiry is directed to the test to be applied in considering the validity of the classification. If petitioners' claim is measured by the "compelling interest" test, the state must demonstrate that a classification serves a compelling governmental interest and that there are no reasonable, less intrusive means by which the goals of the state can be achieved. (*Dunn* v. *Blumstein* (1972) 405 U.S. 330, 342-343 [31 L.Ed.2d 274, 284-285, 92 S.Ct. 995].) On the other hand, under the less demanding "rational relation" test a classification does not deny equal protection if any set of facts may reasonably be conceived in its justification. (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].)

Because the right of franchise is fundamental in character, the stricter of these standards has often been applied to test the validity of restrictions upon the right to be a candidate. ■ Although not every classification created by an election law is subject to strict scrutiny, the "compelling interest" measure must be applied if a classification has a "real and appreciable impact" upon the equality, fairness and integrity of the electoral process. (*Bullock* v. *Carter* (1972) 405 U.S. 134, 144 [31 L.Ed.2d 92, 100, 92 S.Ct. 849].) A number of cases have held that the strict scrutiny test is therefore applicable to a law which requires a candidate to pay a filing fee as a condition of access to the ballot (*Bullock* v. *Carter, supra,* 405 U.S. 134, 144 [31 L.Ed.2d 92, 100]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 345 [116 Cal.Rptr. 97, 525 P.2d 1273]), to certain durational residence requirements for candidacy (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 468 [125 Cal.Rptr. 129, 541 P.2d 881]; *Thompson* v. *Mellon* (1973) 9 Cal.3d 96, 101-102 [107 Cal.Rptr. 20, 507 P.2d 628, 65 A.L.R.3d 1029]; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 720-723 [94 Cal.Rptr. 602, 484 P.2d 578]), and to a statute reserving the top place on the ballot to incumbents (*Gould* v. *Grubb* (1975) 14 Cal.3d 661, 670-672 [122 Cal.Rptr. 377, 536 P.2d 1337]).

When considered in the light of these decisions, the limitation involved in the present case has an appreciable impact upon the equality

and fairness of the electoral process. The freeholder requirement has the effect of denying nonlandowner voters the right to elect candidates who do not own real property. The voters' choice is thus confined to those whose predilections may favor the special concerns of landowners over the general welfare of all residents. Since the directors of the district decide such issues as rate increases for water and power,[6] the distribution of water between agricultural and nonagricultural uses, and other matters which could vitally affect the economic welfare of the residents as well as the environment in which they live, the bar of section 21100 imposes a substantial burden upon the right of franchise. Manifestly it also imposes a serious barrier to a candidate's ability to run for office.

Indeed, the restriction involved here is in some respects more pervasive than those considered in the several election cases cited above, because here the potential candidate is entirely excluded from the ballot on the ground that he is not a freeholder, and neither the payment of a fee, the fulfillment of a durational residence requirement, nor a willingness to allow the placement of his name on the ballot below that of the incumbent can qualify him as a candidate.

Nevertheless, amicus asserts, section 21100 does not unfairly affect the electoral process because an irrigation district is an entity which exercises limited powers and its functions have a disproportionate effect upon landowners. In this connection, amicus relies upon an analogous line of cases involving a closely related problem, i.e., whether the right to *vote* in a special purpose district election may be limited to landowners. As we have seen, all electors of an irrigation district are entitled to vote. The argument goes as follows: Although it is true that all electors of an irrigation district are entitled to vote in district elections, the Legislature was not required to afford this right to nonlandowners because it is constitutional to require ownership of property as a condition of voting in elections in a special purpose district which has only limited powers if the exercise of those powers has a disproportionate effect upon landowners. An irrigation district comes within this exception to the general right of franchise, and since the right to vote is more fundamental than the right to become a candidate for office, it follows that the Legislature

---

[6] Amicus curiae observes that the water supplied by the district for residential and commercial purposes is for the most part not delivered directly by the district to consumers, but to municipalities or utility districts, which in turn distribute the water to the consumers and establish the rates to be charged. This circumstance has no significant impact upon what we have said above, for the charges set by the district obviously affect the rates set by the municipalities and utility districts which distribute the water to the consumers.

was not required to allow those who do not own land the opportunity to serve as a director of the district.

We are unpersuaded by this rationale and the premise upon which it is based. In our view, the pervasive powers exercised by this irrigation district over all residents within its vast area, whether or not they are landowners, are such that neither the right to vote nor the right to serve as a director may be confined to freeholders.

In a virtually unbroken line of recent decisions, the United States Supreme Court has struck down statutes requiring property qualifications for voting in special purpose districts. The sole exception to this trend, *Salyer Land Co.* v. *Tulare Water District* (1973) 410 U.S. 719 [35 L.Ed.2d 659, 93 S.Ct. 1224], will be discussed *infra*.

The court has invalidated property requirements for voters in a school district election (*Kramer* v. *Union School District* (1969) 395 U.S. 621, 632 [23 L.Ed.2d 583, 592-593, 89 S.Ct. 1886]) as well as elections to approve the issuance of bonds for the construction of a city library (*Hill* v. *Stone* (1975) 421 U.S. 289, 297 [44 L.Ed.2d 172, 178-179, 95 S.Ct. 1637]), revenue bonds for the use of a municipal utility district (*Cipriano* v. *City of Houma* (1969) 395 U.S. 701, 705-706 [23 L.Ed.2d 647, 651-652, 89 S.Ct. 1897]), and general obligation bonds to finance municipal improvements (*Phoenix* v. *Kolodziejski* (1970) 399 U.S. 204 [26 L.Ed.2d 523, 90 S.Ct. 1990]).

In *Burrey* v. *Embarcadero Mun. Improvement Dist.* (1971) 5 Cal.3d 671 [97 Cal.Rptr. 203, 488 P.2d 395], we held that a statute imposing a property qualification for voting was invalid in a municipal improvement district because the district exercised powers normally held by a municipal government.

The consistent theme of these cases is that in order to deny the franchise to some voters the excluded class must be substantially less affected by the results of the election than those who are entitled to vote. In applying this rule, it was held that all voters have an important interest in the benefits of adequate service and favorable rates of a utility district (*Cipriano*), that both property owners and those who do not own property are called upon either directly or indirectly to pay for the improvements acquired from the proceeds of bonds (*Phoenix, Hill*), and that those who do not own property may have as direct an interest in school affairs (*Kramer*) or in a library (*Hill*) as those who do.[7]

---

[7]A related issue is whether the "one person one vote" rule must be extended to elections held in special purpose districts. In *Hadley* v. *Junior College District* (1970) 397

The only recent decision of the high court upholding a property qualification for voters in a special purpose district is *Salyer Land Co.*, v. *Tulare Water District, supra,* 410 U.S. 719, which involved a California water storage district organized pursuant to section 39000 et seq. In that case the court held that because a water storage district does not exercise normal governmental authority, and its actions disproportionately affect landowners because the economic burden of its operations is confined to landowners, it is not a denial of equal protection to withhold the right of franchise from those who do not own land.

Amicus contends that no valid distinction may be made between the powers exercised by water storage districts and irrigation districts and that in both types the activities of the district disproportionately affect landowners.

Although many of the powers of a water storage district referred to in *Salyer* are also exercised by irrigation districts, there are significant differences between the operations of the two entities. The basic function of a water storage district is to acquire, store and distribute water for farming. In connection with this primary purpose, the district may acquire and operate works for drainage, reclamation and the generation of hydroelectric power as well as for the distribution of water, and engage in flood control activities. An irrigation district, by contrast, may produce or purchase electric power and operate flood control facilities without regard to whether such functions are ancillary to irrigation and, in addition, it may operate sewage disposal works, if authorized by the electorate, and recreational facilities in connection with property under its control.

Moreover, in the present case, unlike *Salyer,* assessments against land are not the sole means by which the district's expenses are paid. The district may collect charges for the sale of domestic water, electric power, sewage disposal and other services in lieu of assessments, and such charges are paid by both landowners and those who do not own land. And it is authorized to pay its bonds from revenues other than assessments.

Furthermore, there is a very great difference between the actual functions and effects of the water storage district involved in *Salyer* and

U.S. 50 [25 L.Ed.2d 45, 90 S.Ct. 791], it was held that the trustees of a junior college district performed important governmental functions and the exercise of their powers was of sufficient impact generally to justify the application of the "one person one vote" rule to elections for the office of trustee. (See *Girth* v. *Thompson* (1970) 11 Cal.App.3d 325 [89 Cal.Rptr. 823]; cf. *Schindler* v. *Palo Verde Irrigation Dist.* (1969) 1 Cal.App.3d 831 [82 Cal.Rptr. 61]; *Thompson* v. *Board of Directors* (1967) 247 Cal.App.2d 587 [55 Cal.Rptr. 689].)

the district in the present case. In *Salyer* the district did not generate electric power, and its population consisted of 77 persons, which included 18 children; most of the residents were employees of one or another of the four corporations which owned 85 percent of the land in the district. In the instant case, the residents of the district rely for all their water and power needs upon the irrigation district, which is the second largest employer in the county. About two-thirds of the county's residents are from urban communities, and only half of these own their own homes. There are 100,000 urban residents alone in the district, contrasted with the 77 in *Salyer*. While we do not imply that a mere census count, i.e., the differences in the size of the population served, is wholly determinative, nevertheless the disparity in operational functions between the two districts cannot be ignored in assessing the effects of *Salyer*.

The district's nonlandowning voters are no less interested in the results of the election for director than were the voters whose exclusion from the franchise was invalidated in the cases we have cited. If a voter who does not own property cannot constitutionally be excluded from voting on a bond issue for the construction of a library (*Hill*) or bonds to be used by a municipal utility district (*Cipriano*) a fortiori, he may not be deprived of the right to vote in an election for director of an irrigation district, which exercises the broad powers and provides the essential services rendered by Imperial. Indeed, the very fact that the Legislature granted the franchise to electors who do not own land indicates that they have an appreciable stake in the affairs of the district.

 It follows that we must test the constitutionality of section 21100 by whether it furthers a compelling state interest. Amicus curiae does not claim that such an interest is present, nor do we perceive that the freeholder requirement meets this exacting standard.[8] Thus we find section 21100 unconstitutional as applied to real parties in interest on the ground that it deprives both candidates and voters in Imperial Irrigation District of equal protection of the laws in violation of the United States Constitution and the California Constitution.[9]

---

[8]*Salyer* applied the "rational relation" test to the voting rights of residents in water storage districts because of the limited powers exercised by such districts. It concluded that because landowners were to bear the entire burden of the district's costs, the state could rationally conclude that they should be charged with responsibility for its operations. By contrast, landowners and nonlandowners alike may be called upon to share in the operating costs of irrigation districts.

[9]A cogent analysis of *Salyer* and the problems involved in property qualification for voting in special purpose districts is contained in Myers, *Public Officials* (1974) 7 Loyola L.A.L.Rev. 227.

For two reasons we do not decide at this time whether other irrigation districts, or irrigation districts generally, are affected by our conclusion. First, Imperial is singular among irrigation districts in that it has more residents, land and employees than the others.[10] Second, neither respondent nor real parties in interest have opposed petitioners' claim that section 21100 is unconstitutional, and the numerous irrigation districts in the state which would be affected by a finding of unconstitutionality have not had the opportunity to present their views or to offer evidence regarding the characteristics and operation of irrigation districts in general.

Because we have concluded on equal protection grounds that section 21100 is unconstitutional insofar as it applies to candidates for director of the Imperial Irrigation District, we do not reach the remaining question: whether section 21100 also violates section 22 of article I of the California Constitution, which provides, "The right to vote or Hold office may not be conditioned by a property qualification."[11]

Since it has served its purpose, the alternative writ heretofore issued is discharged and the peremptory writ is denied. (*Green* v. *Layton* (1975) 14 Cal.3d 922, 928 [123 Cal.Rptr. 97, 538 P.2d 225].)

Petitioners are to recover their costs and reasonable attorney's fees from the Imperial Irrigation District, real party in interest. (42 U.S.C. § 1973*l*(e).) If the parties are unable to agree within 30 days as to the appropriate amount of costs and attorney's fees, the matter may be submitted to the court on affidavits.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I concur in the majority opinion to the extent that it holds unconstitutional section 21100 of the Water Code as applied to

---

[10]According to statistics submitted by amicus, 53 of the 69 districts surveyed contained 100,000 or fewer acres of land, and only Imperial contains more than 300,000 acres. With regard to population, only 6 of the 69 had urban populations greater than 30,000 persons, and only 2 (including Imperial) had more than 100,000 urban residents. Imperial is the only district employing more than 350 persons; 59 of the 69 had 100 or fewer employees. Only seven districts generate electric power, and of these only three deliver electric power to consumers. Three districts provide sewage disposal services, and 34 deliver no domestic water. There are 10,000 or fewer voters in 46 of the 69 districts, and only 4 (including Imperial) have more than 25,000 voters within their boundaries.

[11]Prior to its amendment in 1974, this provision was contained in section 24 of article I, and it read, "No property qualification shall ever be required for any person to vote or hold office."

candidates and voters in the Imperial Irrigation District. As noted by the majority, "Imperial is singular among irrigation districts in that it has more residents, land and employees than the others." (*Ante,* p. 669, fn. omitted.) Imperial is unique in its great size, the variety of its activities, and its undoubted direct and substantial effect upon the thousands of nonproperty owners residing within its boundaries. Under such circumstances, it would be constitutionally impermissible to deprive nonproperty owners of the right to seek election as district director.

On the other hand, there exist numerous smaller irrigation districts throughout this state whose primary function is, as the name implies, the irrigation of farmland, and whose principal constituents are property-owning farmers or ranchers. As the majority appear to recognize and accept, a requirement that district directors own real property within the district may be constitutionally proper in those situations wherein it may be demonstrated that the district's functions have a disproportionate effect and impose a distinctive burden upon landowners. This principle was recently recognized by the United States Supreme Court in its consideration of California water storage districts. (Wat. Code, § 39000 et seq.; *Salyer Land Co.* v. *Tulare Water District* (1973) 410 U.S. 719 [35 L.Ed.2d 659, 93 S.Ct. 1224].) As stated in *Salyer,* ". . . the appellee water storage district, by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group, is . . . [an] exception to the [one person-one vote] rule . . . ." (P. 728 [35 L.Ed.2d p. 666].)

The special importance to property owners of the financial burdens imposed by an irrigation district has long been legislatively recognized. This may be seen in the requirement that in the *formation* of a district under either of the statutory alternative methods, the holders of title, on the one hand, to a majority, or, on the other hand, to 20 percent in value of the land, must join in the proposal. (Wat. Code, § 20700.)

I suggest that the question whether section 21100 is constitutional as applied to irrigation districts other than Imperial must await a case-by-case determination in the light of the principles announced by the United States Supreme Court in *Salyer.*

McComb, J., and Clark, J., concurred.

On September 2, 1976, the judgment was modified to read as printed above.