PAULINE MAYERS

*v.*

F. WAYNE BARTE, CITY MGR.,

WHEELING, W. VA., *et al.*

(No. 15149)

Decided June 16, 1981.

*James E. Moliterno* for petitioner.

*Ronald M. Musser* for respondents.

MILLER, JUSTICE:

In this original mandamus proceeding, the relator, Pauline Myers, seeks to have the freeholder eligibility requirement for membership on a municipal planning commission declared unconstitutional as a violation of equal protection principles. This provision is found in W. Va. Code,

8-24-5,[1] and a similar provision is contained in Section 151.01 of the Code of the City of Wheeling.

Relator relies on several United States Supreme Court cases which have held that a freeholder requirement for holding office on public boards violates equal protection concepts. In *Turner v. Fouche*, 396 U.S. 346, 24 L.Ed.2d 567, 90 S.Ct. 532 (1970), the Court struck down a freeholder requirement for eligibility on a county board of education. More recently in a short per curiam, it applied *Turner* to a property requirement for a position on an airport commission. *Chappelle v. Greater Baton Rouge Airport District*, 431 U.S. 159, 52 L.Ed.2d 223, 97 S.Ct. 2162 (1977). The basis for the decision in *Turner* was that the state could not show even a rational basis for the freeholder requirement.

In *State ex rel. Piccirillo v. City of Follansbee*, 160 W. Va. 329, 233 S.E.2d 419 (1977), we recognized that our equal protection guarantee contained in Article III, Section 17 of the West Virginia Constitution parallels the equal protection standards under the Fourteenth Amendment to the United States Constitution. In so doing, we adopted the two-tiered test of equal protection. If a fundamental or constitutional right is involved, then the state's attempt to classify such right must be based on a compelling state interest. Where the right involved does not rise to a constitutional or fundamental level, the state must only show a rational connection to sustain its classification. *E.g.*, *State ex rel. Bromelow v. Daniel*, 163 W. Va. 532, 258 S.E.2d 119, 120 (1979); *Pauley v. Kelley*, 162 W. Va. 672, 255 S.E.2d 859, 878 (1979); *Woodring v. Whyte*, 161 W. Va. 262, 242 S.E.2d 238, 245 (1978); *Cimino v. Board of Education*, 158 W. Va. 267, 210 S.E.2d 485, 490 (1974).

In *Turner* the Supreme Court expressly declined to determine whether the right to eligibility on a public board or commission was a fundamental or constitutional right which would require the state to demonstrate a compelling

---

[1] The pertinent portion of W. Va. Code, 8-24-5, is:

"A municipal planning commission shall consist of not less than five nor more than fifteen individuals, the exact number to be specified in the ordinance creating such commission, all of whom shall be freeholders and residents of the municipality . . ."

interest to sustain its classification of the right. The Supreme Court concluded that even under the less restrictive rational basis test the freeholder requirement could not be justified.[2]

We have not had occasion to address this precise point. In *Piccirillo*, we concluded that the right to run for office is a fundamental right, but this issue is not before us since the relator does not run in the traditional sense but seeks to remove a bar as to her eligibility so she may be considered for appointment to the office. It is this distinction that caused the Court in *Turner* to turn aside from the ultimate question of the nature of the right to be considered for appointment to a public office.

This point may be more academic than real since once it is found that there is no rational basis for imposing a freeholder requirement for eligibility on a particular public board, then the provision violates equal protection principles even under the less stringent test. When we look to the functions of a planning commission, as contained in W. Va. Code, 8-24-1, *et seq.*, it is apparent that the commission engages in a multitude of projects relating to community planning and development.[3] Its chief function

---

[2] *Turner's* language on this point is:

"The appellants urge that those decisions [*Kramer v. Union Free School District,* 395 U.S. 621, 23 L.Ed.2d 583, 89 S.Ct. 1886 (1969), and *Cipriano v. City of Houma,* 395 U.S. 701, 23 L.Ed.2d 647, 89 S.Ct. 1897 (1969)] require Georgia to demonstrate a 'compelling' interest in support of its freeholder requirement for school-board membership. The appellees reply that Kramer and Cipriano are inapposite because they involved exclusions from voting, not from office-holding. We find it unnecessary to resolve the dispute, because the Georgia freeholder requirement must fall even when measured by the traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective." 396 U.S. at 362, 90 S.Ct. at 541, 24 L.Ed.2d at 580.

[3] W. Va. Code, 8-24-1, sets out the general objectives:

"The governing body of every municipality and the county court of every county may by ordinance create a planning commission in order to promote the orderly development of its governmental units and its environs. It is the object of this article to encourage local units of government to improve the present health, safety,

is the development of a comprehensive plan which embraces all facets of community life, many of which are entirely unrelated to a freeholder's interest. The commission plans for the development and growth of all the citizens of the community, rich and poor, landowners and tenants. To limit its membership to a freeholder class is an arbitrary and irrational classification. We, therefore, conclude the freeholder requirement of W. Va. Code, 8-24-5, and Section 151.01 of the Code of the City of Wheeling violates the equal protection clause of Article III, Section 17 of the West Virginia Constitution. Other courts have arrived at a similar conclusion. *E.g., Davis v. Miller,* 339 F.Supp. 498 (D.C. Md. 1972); *Green v. McKeon,* 335 F.Supp. 630 (D.C. Mich. 1971), *aff'd,* 468 F.2d 883 (6th Cir. 1972); *Socialist Workers Party v. Welch,* 334 F.Supp. 179 (D.C. Tex. 1971); *Choudhry v. Free,* 17 Cal.3d 660, 552 P.2d 438, 131 Cal. Rptr. 654 (1976); *Landes v. Town of North Hempstead,* 20 N.Y.2d 417, 231 N.E.2d 120, 284 N.Y.S.2d 441 (1967);

convenience and welfare of their citizens and to plan for the future development of their communities to the end that highway systems be carefully planned; that new community centers grow only with adequate highway, utility, health, educational and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds. . . ."

W. Va. Code, 8-24-16, provides for the development of a comprehensive plan which must take into account "population density, health, general welfare, water and sanitation requirements, and future potential for residential, commercial, industrial or public use." This statute concludes with the following objectives for a comprehensive plan:

"(1) To create conditions favorable to health, safety, transportation, prosperity, civic activities and recreational, educational and cultural opportunities;

"(2) To reduce the wastes of physical, financial or human resources which result from either excessive congestion or excessive scattering of population; and

"(3) Toward the efficient and economic utilization, conservation and production of the supply of food and water and of drainage, sanitary and other facilities and resources."

Additionally, W. Va. Code, 8-24-17, contains some 18 enumerated topics for study for possible inclusion in a comprehensive plan.

*Sorenson v. City of Bellingham,* 80 Wash.2d 547, 496 P.2d 512 (1976).

The respondent, City of Wheeling, asserts that a mandamus proceeding cannot be used to challenge the constitutionality of a statute or ordinance since the relator could have instituted a declaratory judgment action under W. Va. Code, 55-13-1, *et seq.*

The familiar rule to invoke mandamus is that the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy. *McGrady v. Callaghan,* 161 W. Va. 180, 244 S.E.2d 793 (1978); *State ex rel. Damron v. Ferrell,* 149 W. Va. 773, 143 S.E.2d 469 (1965); *State ex rel. Zagula v. Grossi,* 149 W. Va. 11, 138 S.E.2d 356 (1964); *State ex rel. Bronaugh v. City of Parkersburg,* 148 W. Va. 568, 136 S.E.2d 783 (1964); *State ex rel. Vance v. Arthur,* 142 W. Va. 737, 98 S.E.2d 418 (1957).

We have in the past held that mandamus may be used to attack the constitutionality or validity of a statute or ordinance. *State ex rel. McCamic v. McCoy,* ____ W. Va. ____, 276 S.E.2d 534 (1981); *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W. Va. 636, 171 S.E.2d 545 (1969); *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W. Va. 479, 153 S.E.2d 284 (1967); *State ex rel. Sheldon v. City of Wheeling,* 146 W. Va. 691, 122 S.E.2d 427 (1961). Since the statute involves a public office, the right sought to be enforced is a public one. In this situation a mandamus can be brought by a citizen, taxpayer or voter. *State ex rel. Brotherton v. Moore,* 159 W. Va. 934, 230 S.E.2d 638 (1976); *State ex rel. W. Va. Lodge, Fraternal Order of Police v. City of Charleston,* 133 W. Va. 420, 56 S.E.2d 763 (1949); *Prichard v. DeVan,* 114 W. Va. 509, 172 S.E. 711 (1934); *State ex rel. Matheny v. County Court of Wyoming County,* 47 W. Va. 672, 35 S.E. 959 (1900). It is true that a declaratory judgment suit might have been used, but as relator points out it is not as adequate a remedy since the vacancy could be filled before the suit is ultimately decided.

For the foregoing reasons, a moulded writ of mandamus is awarded directing the respondent to consider relator as eligible for appointment on the Wheeling Planning Commission.

*Moulded Writ of
Mandamus Awarded.*