**STATE OF WEST VIRGINIA**

**FILED**

**June 13, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ALLEY CAT ALLIES INCORPORATED,**
**Plaintiff Below, Petitioner,**

**v.) No. 22-744** (Berkeley County CC-02-2022-C-53)

**BERKELEY COUNTY ANIMAL CONTROL AND**
**COUNTY COUNCIL OF BERKELEY COUNTY,**
**Defendants Below, Respondents.**

## MEMORANDUM DECISION

The petitioner, Alley Cat Allies Incorporated ("Alley Cat"), appeals from an order entered July 29, 2022, by the Circuit Court of Berkeley County. Alley Cat initiated the underlying proceedings by filing a complaint seeking mandamus relief against the respondents, Berkeley County Animal Control ("Animal Control") and County Council of Berkeley County ("the Council" and, collectively, "the Respondents"), for their alleged failure to obtain medical treatment for animals in the Respondents' care, custody, and control.[1] The Respondents moved to dismiss Alley Cat's complaint, and the circuit court determined that dismissal was warranted because Alley Cat did not have standing as a taxpayer to bring its action against the Respondents.

Alley Cat argues on appeal that the circuit court erred because Alley Cat had standing as a taxpayer to compel the Respondents to comply with their statutory duty to prevent animal cruelty as set forth in West Virginia Code § 7-10-2(a) (eff. 2018).[2] Alley Cat further alleges that the Respondents' failure to obtain medical treatment for animals in their care, custody, and control violates West Virginia Code § 61-8-19(a)(1)(C)(iii) (eff. 2008).[3] We have reviewed the appendix record submitted by the parties, but we cannot determine, based upon the limited record, whether Alley Cat has standing as a taxpayer to pursue its action against the Respondents. Therefore, we

---

[1] Alley Cat is represented by counsel Timothy Hyland, and counsel Anthony J. Delligatti and Jeffery T. Mauzy represent the Respondents.

[2] West Virginia Code § 7-10-2(a) (eff. 2018) is discussed in further detail in Section I, *infra*. Although this section was recently amended by the Legislature and the two statutory versions are substantially similar, we apply the 2018 version of section 7-10-2(a) as that was the version in effect at the time Alley Cat filed its complaint for mandamus relief. *See generally* W. Va. Code § 7-10-2(a) (eff. 2024).

[3] *See* note 7, *infra*, for additional information regarding this statute.

1

reverse the circuit court's order and remand this case for further factual development and additional analysis by the circuit court regarding Alley Cat's standing as a taxpayer to pursue the request for mandamus relief against the Respondents. We additionally find that this case satisfies the "limited circumstances" requirement of Rule 21 of the West Virginia Rules of Appellate Procedure and is appropriate for disposition by memorandum decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Alley Cat is a foreign[4] 501(c)(3)[5] animal advocacy organization whose mission is explained in its complaint as "dedicated to protecting and improving the lives of cats." On November 23, 2021, Alley Cat purchased a parcel of real property in Berkeley County, West Virginia. The next day, Alley Cat filed a petition for a writ of mandamus in this Court, Case Number 21-0962, seeking to compel Animal Control[6] to provide medical care and treatment for animals in its care, custody, and control consistent with its statutory duty enumerated in West Virginia Code § 7-10-2(a) to ensure the humane treatment of animals: "Humane officers shall prevent the perpetration or continuance of any act of cruelty upon any animal and investigate and, upon probable cause, cause the arrest and assist in the prosecution of any person engaging in such cruel and forbidden practices." Alley Cat further alleged that Animal Control's failure to obtain necessary medical care for the animals in its care, custody, and control violated West Virginia Code § 61-8-19(a)(1)(C)(iii), a criminal statute precluding the intentional withholding of medical treatment for animals.[7] We refused the writ by order entered February 23, 2022, commenting that,

---

[4] Alley Cat is characterized as a foreign organization because it is a Delaware corporation with its principal place of business in Maryland. Alley Cat avers that it is registered to do business in West Virginia.

[5] The 501(c)(3) appellation refers to Alley Cat's tax-exempt status under section 501(c)(3) of the Internal Revenue Code. *See generally* 26 U.S.C. § 501(c)(3) (eff. 2019).

[6] The Council was not named as a party to Alley Cat's original jurisdiction proceeding in this Court.

[7] West Virginia Code § 61-8-19(a)(1)(C)(iii) (eff. 2008) provides that "It is unlawful for any person to intentionally, knowingly or recklessly . . . [w]ithhold . . . [m]edical treatment, necessary to sustain normal health and fitness or to end the suffering of any animal[.]" This statute further imposes misdemeanor criminal penalties for the violation of these provisions. *See* W. Va. Code § 61-8-19(a)(2) ("Any person in violation of subdivision (1) of this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than three hundred nor more than two thousand dollars or confined in jail not more than six months, or both."). *See also* W. Va. Code § 61-8-19(g) ("Notwithstanding the provisions of subsection (a) of this section, any person convicted of a second or subsequent violation of subsection (a) is guilty of a misdemeanor and shall be confined in jail for a period of not less than ninety days nor more than one year, fined not less than five hundred dollars nor more than three thousand dollars, or both. The incarceration set forth in this subsection is mandatory unless the provisions of subsection (h) of this section are complied with.").

"[u]pon consideration and review, the Court is of the opinion that a rule should not be awarded, and the writ prayed for by the petitioner is refused."[8]

Alley Cat then filed the underlying complaint against the Respondents[9] in the Circuit Court of Berkeley County on March 3, 2022, claiming that it had standing as a taxpayer and seeking substantially the same mandamus relief as it had requested from this Court. The Respondents filed a motion to dismiss under Rule 12(b)(1) of the West Virginia Rules of Civil Procedure, claiming that Alley Cat lacked standing as a taxpayer. By order entered July 29, 2022, the circuit court granted the Respondents' motion to dismiss, ruling that it lacked subject matter jurisdiction over the case because Alley Cat did not have standing to bring the suit as a taxpayer. In reaching this conclusion, the circuit court applied the traditional test for standing adopted by this Court in Syllabus point 5 of *Findley v. State Farm Mutual Automobile Insurance Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002),[10] and determined that

---

[8] Pursuant to Rule 16(j) of the West Virginia Rules of Appellate Procedure,

> [i]f the Supreme Court declines to issue a rule to show cause, such determination shall be without prejudice to the right of the petitioner to present a petition to a lower court having proper jurisdiction, unless the Supreme Court specifically notes in the order denying a rule to show cause that the denial is with prejudice.

*Id.* Given that our order was silent on this point, by Rule, our order was issued without prejudice.

[9] Although Alley Cat named only Animal Control as a respondent to its original jurisdiction action before this Court, Alley Cat named both Animal Control and the Council as defendants in its Berkeley County complaint. In doing so, Alley Cat alleged that Animal Control

> is the governmental office within . . . [the] Council entrusted with the statutory duty of "prevent[ing] the perpetration or continuance of any act of cruelty upon any animal," W. Va. Code § 7-10-2(a), or, in other words, "personally see[ing] that the law relating to the prevention of cruelty to animals is enforced," *id.* § 7-10-1.

However, in their motion to dismiss Alley Cat's complaint, the Respondents aver that "Animal Control is a department in the Berkeley County Sheriff's Office" and that "the . . . Council, does not, contrary to the claim in the Complaint, have authority or control over veterinary care decisions of animal control officers." Nevertheless, both named defendants participated in the circuit court proceedings and have appeared as parties in this appeal.

[10] Syllabus point 5 of *Findley v. State Farm Mutual Automobile Insurance Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002), holds:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an

3

> [Alley Cat] has no concrete and particularized injury, and the purported injury to be abated by issuing the writ is not to the organization, its members, or their property, but to some future animal and its owner.
>
> Any potential future injury is not actual or imminent; it is conjectural and hypothetical.
>
> Because [Alley Cat] has no injury-in-fact, it lacks standing[,] and this [c]ourt lacks subject matter jurisdiction.

The circuit court considered and rejected Alley Cat's argument that it has standing as a taxpayer to require the Respondents to comply with the laws of this State prohibiting animal cruelty. In making that determination, the court reviewed Syllabus point 3 of *Myers v. Barte*, 167 W. Va. 194, 279 S.E.2d 406 (1981),[11] that affords standing to taxpayers, but ultimately concluded that Alley Cat lacked taxpayer standing:

> While [Alley Cat] may have paid some property transfer taxes or even property taxes, taxpayer standing for public rights requires more than just buying a piece of property and paying the transfer tax on the same day that the Petition is filed.
>
> While an individual owner of an animal may have a property right as to the treatment of that animal while in the care of an animal control officer, there is no public right to be enforced here.
>
> Therefore, based on the facts presented by [Alley Cat], [Alley Cat] has not demonstrated that it is a taxpayer in West Virginia seeking to enforce a public right sufficient to give rise to taxpayer standing.

Alley Cat contends the circuit court erred in this ruling and appeals to this Court.

---

> "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

*Id.*

[11] We held in Syllabus point 3 of *Myers v. Barte*, 167 W. Va. 194, 279 S.E.2d 406 (1981), that "[w]here the right sought to be enforced is a public one, mandamus can be sought by any citizen, taxpayer or voter." *Id.*

4

## II.  STANDARD OF REVIEW

Alley Cat appeals from the circuit court's order granting the Respondents' motion to dismiss. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) (involving Rule 12(b)(6) motion to dismiss). *Accord Commonwealth, Pennsylvania Fish & Boat Comm'n v. Consol Energy, Inc.*, 233 W. Va. 409, 758 S.E.2d 762 (2014) (per curiam) (applying *Scott Runyan* standard of review in case involving Rule 12(b)(1) motion to dismiss). Likewise, our review of the circuit court's application of our law regarding taxpayer standing also is plenary: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

## III.  DISCUSSION

Alley Cat claims that the circuit court erred by dismissing its complaint against the Respondents upon finding that Alley Cat lacked standing as a taxpayer to pursue its claim for mandamus relief. We first consider the concept of taxpayer standing to pursue a claim for mandamus relief, and then we review Alley Cat's claims that it qualifies as a taxpayer for purposes of establishing taxpayer standing.[12]

### A.  Taxpayer Standing

Taxpayers have long been afforded standing to compel a public official to perform a nondiscretionary public duty under a specific standard applicable to taxpayers and similarly-situated individuals. For example, we held in Syllabus point 1 of *Frantz v. Wyoming County Court*, 69 W. Va. 734, 73 S.E. 328 (1911), that "[a] citizen, tax-payer or voter in any proper case may maintain *mandamus* to compel a public tribunal to perform a ministerial duty, imposed upon it by law in favor of the public, without showing any special or pecuniary interest in the performance thereof."[13] *Id. Accord State ex rel. Brotherton v. Moore*, 159 W. Va. 934, 938, 230 S.E.2d 638, 640-41 (1976) ("We have faithfully adhered to the principle that a citizen and taxpayer may maintain a mandamus proceeding to compel any public officer to perform a nondiscretionary

---

[12] Given the present posture of this matter as an appeal from an order dismissing the case on jurisdictional grounds and our conclusion that further factual development on that issue is necessary, we find it premature to address Alley Cat's assignments of error regarding the circuit court's rulings on the merits of its request for mandamus relief.

[13] We also have held that "[m]andamus is a proper proceeding by which to compel a public officer to perform a mandatory, nondiscretionary legal duty." Syl. pt. 3, *Delardas v. Cnty. Ct. of Monongalia Cnty.*, 155 W. Va. 776, 186 S.E.2d 847 (1972). *See also* Syl. pt. 2, *Marcum v. Ballot Comm'rs of Lincoln, Logan, Mingo, & Wayne Cntys.*, 42 W. Va. 263, 26 S.E. 281 (1896) ("A ministerial act or duty is one which is to be performed under a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to or exercise of the judgment of the one doing it upon the propriety of the act's being done.").

legal duty. . . . No special or pecuniary interest must be shown by individuals who sue in this capacity." (citations omitted)). Stated more succinctly, "[w]here the right sought to be enforced is a public one, mandamus can be sought by any citizen, taxpayer or voter." Syl. pt. 3, *Myers*, 167 W. Va. 194, 279 S.E.2d 406.

Here, Alley Cat seeks to compel the Respondents to fulfill their statutory duties to prevent animal cruelty by providing necessary veterinary care for animals in their care, custody, and control in accordance with West Virginia Code § 7-10-2(a), as tempered by the criminal statute, West Virginia Code § 61-8-19(a)(1)(C)(iii), making it unlawful to "intentionally, knowingly or recklessly" withhold certain medical treatment from animals. The Respondents challenge Alley Cat's standing to assert these claims. Although the circuit court properly addressed the standing issue at the outset of the proceedings, it did not use the standing analysis that is specifically applicable to a determination of taxpayer, rather than general, standing. *Compare* Syl. pt. 1, *Frantz*, 69 W. Va. 734, 73 S.E. 328 (involving taxpayer standing), *and* Syl. pt. 3, *Myers*, 167 W. Va. 194, 279 S.E.2d 406 (same), *with* Syl. pt. 5, *Findley*, 213 W. Va. 80, 576 S.E.2d 807 (concerning standing, generally). Therefore, we reverse the circuit court's ruling on this point and remand for further proceedings, as explained below.

We must then determine, as a threshold matter, whether Alley Cat qualifies as a taxpayer that may establish standing to maintain its action against the Respondents.

### B. Taxpayer Status

While taxpayer standing is well-established, the requirements to qualify as a taxpayer for standing purposes are not. Alley Cat contends that the averments in its complaint regarding its status as a taxpayer should be taken as true because courts customarily assume a plaintiff's allegations are true when considering a motion to dismiss. *See Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (noting, in considering Rule 12(b)(6) motion to dismiss, that "A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." (citation omitted)). While this statement is true regarding motions to dismiss alleging that a plaintiff has failed to "state a claim upon which relief can be granted" under West Virginia Rule of Civil Procedure 12(b)(6),[14] the deference afforded a

---

[14] *See* W. Va. R. Civ. P. 12(b)(6) (recognizing motion to dismiss for "failure to state a claim upon which relief can be granted"). *See also Haught v. Fletcher*, 246 W. Va. 424, 431, 874 S.E.2d 27, 34 (2022) ("[A]ll inferences are to be made in the plaintiff's favor when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]"); *Mason v. Torrellas*, 238 W. Va. 1, 5, 792 S.E.2d 12, 16 (2016) ("'For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true. . . . The policy of the rule is thus to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied.' *John W.*

6

plaintiff's complaint does not extend to motions to dismiss brought under Rule 12(b)(1), like the one filed by the Respondents, alleging that the court has no subject matter jurisdiction to hear the case. *See* W. Va. R. Civ. P. 12(b)(1) (addressing motion to dismiss based upon "lack of jurisdiction over the subject matter"). When ruling upon a Rule 12(b)(1) jurisdictional motion to dismiss, a court may consider matters outside the pleadings to determine whether it has subject matter jurisdiction to determine the case on the merits.

> The standard for dismissal based on lack of subject matter jurisdiction, while similar to the standard for the rule governing motions to dismiss for failure to state a claim, permits the court to consider a broader range of materials in resolving the motion. Trial courts are not bound to the pleadings in making a subject matter determination. A court may, when necessary, hear evidence outside the pleadings to determine the issue of subject matter jurisdiction. That is, trial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

Louis J. Palmer, Jr. & Robin Jean Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b), 335-36 (5th ed. 2017) (footnotes omitted).

This assessment of the merits of jurisdictional motions is essential because, without subject matter jurisdiction, a court lacks the authority to decide a case on its merits. "It is a fundamental principle of law that a court must possess . . . subject matter jurisdiction in order to exercise authority in a case." *Burnett v. Burnett*, 208 W. Va. 748, 753, 542 S.E.2d 911, 916 (2000). "[J]urisdiction of the court depends upon the state of things at the time of the action brought." Palmer & Davis, *Litigation Handbook* § 12(b), 334.

Furthermore, "[t]he burden for establishing standing is on the plaintiff." *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 243, 800 S.E.2d 506, 510 (2017). *Accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (recognizing plaintiff seeking to invoke federal court jurisdiction "bears the burden of establishing" standing (citations omitted)). Therefore, a court may require a plaintiff to present additional evidence to support its claim of subject matter jurisdiction in response to a Rule 12(b)(1) motion to dismiss. *See State ex rel. Charleston Area Med. Ctr., Inc. v. Thompson*, 248 W. Va. 352, 360 n.13, 888 S.E.2d 852, 860 n.13 (2023) ("This Court has previously noted that '"[a] motion under Rule 12(b)(2) of the West Virginia Rules of Civil Procedure [relating to dismissal for lack of personal jurisdiction] cannot be converted to a Rule 56 motion for summary judgement, even though a trial court considers matters outside the pleadings in deciding the Rule 12(b)(2) motion." [Syl. pt. 4, *Easterling v. Am. Optical Corp.*, 207 W. Va. 123, 529 S.E.2d 588 (2000).] A motion for dismissal based on Rule 12(b)(1) grounds, being jurisdictional, merits the same treatment.' *Elmore v. Triad Hosps., Inc.*, 220 W. Va. 154, 157 n.7, 640 S.E.2d 217, 220 n.7 (2006) (per curiam) (some alterations in original).").

---

*Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158-59 (1978) [(citation omitted)].").

Throughout the proceedings both in the circuit court and on appeal to this Court, Alley Cat has variously asserted that it is a taxpayer based on: (1) its payment of a transfer tax upon its purchase of a parcel of real property in Berkeley County, West Virginia; (2) its payment of its pro rata share of the real property taxes on that parcel at the time of purchase; (3) its payment of real property taxes in a different West Virginia county; and (4) its payment of unspecified unemployment taxes in West Virginia. Despite Alley Cat's assertions that it has standing as a taxpayer in this case, the lack of evidence of its payment of taxes in this State precludes us from ascertaining whether Alley Cat was a taxpayer with standing at the time it brought its mandamus action against the Respondents.

Alley Cat first bases its status as a taxpayer upon its payment of the transfer taxes when it purchased its parcel of real property in Berkeley County. *See generally* W. Va. Code § 11-22-2(a) (eff. 2020) ("Every person who delivers, accepts, or presents for recording any document, or in whose behalf any document is delivered, accepted, or presented for recording, is subject to pay for, and in respect to the transaction or any part thereof, a state excise tax upon the privilege of transferring title to real estate . . . .").[15] Alley Cat also claims that it paid a pro rata portion of the real property taxes at the time it purchased its Berkeley County parcel; that it paid real property taxes for property it owns in Jefferson County, West Virginia; and that it "is required to pay unemployment assessments and other applicable taxes in West Virginia." Despite these assertions, the appendix record contains no evidence supporting Alley Cat's bare allegations that it has, in fact, paid these taxes or that it was paying taxes at the time it filed its complaint against the Respondents in March 2022. *See generally* Palmer & Davis, *Litigation Handbook* § 12(b), 334 (recognizing that "jurisdiction of the court depends upon the state of things at the time of the action brought"). The lack of information in the record supporting Alley Cat's status as a taxpayer precludes a finding that it has standing to bring the mandamus action below.[16]

Because Alley Cat has not borne its burden of proof to establish its status as a taxpayer with standing to seek mandamus relief to compel the performance of a nondiscretionary public duty, we reverse the circuit court's order that failed to conduct the appropriate taxpayer standing analysis and remand for further evidentiary development regarding Alley Cat's taxpayer status. Once such evidence has been provided, we direct the circuit court to reconsider whether Alley Cat

---

[15] Although the Legislature recently amended this statute, we apply the version that was in effect when Alley Cat purchased the Berkeley County real property. *See* W. Va. Code § 11-22-2(a) (eff. 2023).

[16] Alley Cat also contends that it is a 501(c)(3) organization, which designation, by definition, exempts it from the payment of certain taxes. *See* 26 U.S.C. § 501(c)(3). To be classified as a taxpayer, one must actually pay taxes. *See Morgan v. Bd. of Supervisors*, 192 P.2d 236, 242 (Ariz. 1948) (observing that "one who is wholly exempt from taxation and actually pays no taxes . . . cannot fairly be said to be a 'taxpayer'"), *abrogated on other grounds by Huggins v. Superior Ct. In & For Cnty. of Navajo*, 788 P.2d 81 (Ariz. 1990). As with its other assertions, though, the record does not indicate whether Alley Cat actually paid the taxes it claims to have paid or whether any of the taxes Alley Cat claims to have paid are subject to this exemption.

has standing as a taxpayer to bring its claim for mandamus relief against the Respondents pursuant to this Court's decisions addressing taxpayer standing.[17]

## IV. CONCLUSION

For the foregoing reasons, we reverse the July 29, 2022 order of the Circuit Court of Berkeley County dismissing Alley Cat's complaint and remand for further factual development and additional analysis regarding Alley Cat's standing as a taxpayer.

Reversed and Remanded with Directions.

**ISSUED:** June 13, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[17] Should the circuit court find that Alley Cat has proven that it does have standing as a taxpayer to pursue its claim for mandamus relief against the Respondents, and that the right or duty that Alley Cat seeks to enforce is a public one as contemplated by *Frantz* and *Myers*, the circuit court should then determine whether Alley Cat is entitled to the mandamus relief it seeks. *See generally* Syl. pt. 2, *Myers v. Barte*, 167 W. Va. 194, 279 S.E.2d 406 ("To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy.").