584 P.2d 646

**Mary Ann JOHNSON, Plaintiff-Appellant,**

v.

**LEWISTON ORCHARDS IRRIGATION DISTRICT, a political subdivision of the State of Idaho, Defendant-Respondent.**

**No. 12523.**

Supreme Court of Idaho.

Sept. 29, 1978.

Owen L. Knowlton of Knowlton & Miles, Lewiston, for plaintiff-appellant.

Thomas W. Feeney, of Blake, Feeney & Clark, Lewiston, for defendant-respondent.

BAKES, Justice.

Appellant Mary Ann Johnson brought this action seeking a declaratory judgment that Art. 1, § 20 of the Idaho Constitution and I.C. § 43–111 violate the equal protection clause of the United States Constitution because they deny her, as a non-property owner, the right to vote in elections of the respondent Lewiston Orchards Irrigation District. The district court upheld the constitutionality of I.C. § 43–111 and Art. 1,

§ 20, and the appellant has appealed from that judgment.

The case was tried on the following agreed statement of facts:

"I

"That plaintiff is a bona fide resident of the City of Lewiston, County of Nez Perce, State of Idaho, and resides at 3422 Eleventh Street therein, within the boundaries of the Lewiston Orchards Irrigation District. That plaintiff is a qualified and registered elector and voter in the City of Lewiston, County of Nez Perce, State of Idaho.

"II

"That plaintiff is not permitted to vote or participate in the annual election of directors for the said district or any other election pertaining to the business of the said district by reason of the provisions of Idaho Code, Section 43-111, and Article I, Section 20, of the Idaho State Constitution which limits the right to vote to property owners. That at the last regular annual election held in said district held on the tenth day of December 1974, plaintiff was refused the right to vote in the said election for the directors by reason of the fact that she was not a property owner within the said district.

"III

"That the Lewiston Orchards Irrigation District was organized as an irrigation district under the provisions of Idaho Code, Sections 43-101 through 43-118, and with its principal office at 1520 Powers, Lewiston, Idaho, and is engaged in the business of furnishing domestic and irrigation water to the residents of the Lewiston Orchards Irrigation District under the provisions of Title 43 of the Idaho Code.

"IV

"That the said Lewiston Orchards Irrigation District, except a small portion, is located within the boundaries of the City of Lewiston, Idaho, and has a population of approximately 15,000 people. That the area is primarily residential in nature and has a well defined business area, and located within the boundaries of the district are numerous business and professional offices, including, but not limited to, retail store, garages, service stations, schools, churches, banks, professional offices, swimming pool, City of Lewiston fire station, baseball parks, and public playgrounds.

"V

"That the area contains 3,777.2 acres, has approximately 70 miles of streets maintained by the City of Lewiston, and has approximately 3,852 domestic services within the district. That many of these involve ownership by a husband and wife; and that, therefore, substantially more than 3,852 persons are presently entitled to vote in district elections.

"VI

"That the said Lewiston Orchards Irrigation District furnishes both domestic water and irrigation water for users within the boundaries of the district. That the irrigation water and domestic water are furnished by separate systems. That approximately sixty-six percent (66%) of the revenue of the district comes from tolls for domestic water and thirty-four percent (34%) of the revenue comes from assessments for irrigation water.

"VII

"That in addition to the furnishing of water within the district and the sale of a relatively minor amount of surplus water outside the district, the district owns a public park and swimming pool which are operated by the Parks and Recreation Department of the City of Lewiston. That the district is further authorized by the provisions of Idaho Code, Section 43-1901, to make provisions for the operation and maintenance of a garbage disposal

program for the benefit of the residents, but is presently not engaged in operating any such garbage program."

Art. 1, § 20, of the Idaho Constitution states:

"§ 20. NO PROPERTY QUALIFICA-TION REQUIRED OF ELECTORS—EX-CEPTIONS.—No property qualifications shall ever be required for any person to vote or hold office except in school elections, or elections creating indebtedness, or in irrigation district elections, as to which last-named elections the legislature may restrict the voters to land owners."

I.C. § 43–111 presently provides with respect to irrigation district elections:

"43–111. QUALIFICATIONS OF VOT-ERS.—No person shall be entitled to vote at any election held under the provisions of this title for the purpose of electing directors, for the purpose of determining whether indebtedness shall be created or bonds issued by the district, or for any other purpose, unless he shall possess all the qualifications required of electors under the general laws of the state, and own land within the district, or the proposed district, and be a resident of the county in which the district, or a portion thereof, is located."

The constitutionality of laws restricting to landowners the right to vote in various special purpose elections has been the subject of considerable judicial scrutiny by the United States Supreme Court over the last decade. *See, e. g., Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975) (Texas law limiting franchise in municipal bond election to those who had "rendered" or listed real or personal property for taxation held unconstitutional); *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) (landownership qualification for voters in water storage district election upheld); *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (landownership qualification for voters in municipal general obligation bond election held unconstitutional); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897,

23 L.Ed.2d 647 (1969) (landownership qualification for voters in public utility revenue bond election held unconstitutional); *Kramer v. Union Free School Dist.,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (landownership qualification for voters in school district election held unconstitutional); *cf. Town of Lockport v. Citizens for Community Action at the Local Level, Inc.,* 430 U.S. 259, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977) (statute providing for approval of proposed county charter by separate majorities of city dwellers and non-city dwellers upheld).

These cases hold that the right to vote is a fundamental political right and that restrictions, other than residence, age and citizenship, on the exercise of that right in an election of general interest must be "carefully and meticulously scrutinized" and must be "necessary to promote a compelling state interest" in order to survive constitutional attack. *Kramer v. Union Free School Dist., supra* 395 U.S. at 626–27, 89 S.Ct. at 1889–90; *see Hill v. Stone, supra.* However, the Supreme Court has not applied this exacting standard of scrutiny to laws limiting the franchise to those primarily interested in or affected by special interest elections. *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., supra; see Hill v. Stone, supra* 421 U.S. at 295, n. 5, 95 S.Ct. at 1642, n. 5. The respondent has not argued with any particularity, and we do not find that any compelling state interest is served by the franchise restriction presented in this case. Thus, the decisive issue presented here is whether the circumstances of this case fall within the "special interest" exception to the exacting standard of scrutiny generally applied to such franchise restrictions.

 Laws limiting the franchise to property owners are excepted from this strict standard of review only if the non-property owners are in fact substantially less interested in or affected by the election than the property owners. *See City of Phoenix v. Kolodziejski, supra.* A brief comparison of *Kolodziejski,* which found a property ownership qualification unconstitutional, with *Salyer,* which upheld such a

qualification, will clarify the nature of the "special interest" exception and crystallize the constitutional issue raised in this appeal.

*Kolodziejski* involved an election to approve the issuance of general obligation bonds by the City of Phoenix. Pursuant to Arizona constitutional and statutory provisions, only real property taxpayers were permitted to vote in the election, and property taxes were to be levied to service the bond indebtedness. However, the city was privileged to use other revenues for this purpose, and the city actually anticipated that approximately one-half of the indebtedness would be paid from other local taxes paid by both non-property and property owners. The Court enunciated three reasons for its conclusion that non-property owners were not substantially less interested in the issuance of the bonds than were property owners. First, all city residents had a substantial interest in the public facilities and services available and would be substantially affected by the outcome of the bond election. Second, the city actually anticipated that a large portion of the bond obligation would be satisfied by local taxes which both property and non-property owners paid. Third, even if a municipality, unlike Phoenix, looked only to property tax revenue for servicing the general obligation bonds, the state would still not be justified in restricting the franchise to property owners. The Court reasoned that although property taxes were initially paid by the property owners, a significant part of this tax burden would be passed on to tenants and therefore virtually all the city residents would share the property tax burden. The Court acknowledged that in theory the general obligation bonds could be loosely described as a lien on property within the city in that the city levied taxes to service the bonds, but the Court was not convinced that the risk of the bond obligations becoming a burden upon property owners which could not be shifted or shared was sufficiently real to justify denying the vote to non-property owners.[1]

*Salyer* involved a California water storage district which consisted of 193,000 acres of farmland and a population of 77 persons, including 18 children. Most of the population were employees of four corporations that farmed 85% of the land in the district. Under California laws such districts were authorized to engage in projects for the acquisition, storage and distribution of water. The cost of the district's projects was assessed against district land in accordance with the benefits accruing to each tract. Only landowners (which included non-resident landowners and corporate landowners) were qualified to elect the district's board of directors and the votes were apportioned according to the assessed value of the lands. Upholding the franchise restriction, the Court emphasized that the district had limited authority, that its primary purpose was to provide irrigation water for farmland in the district, and that the district provided no general public services ordinarily financed by a municipal body. Despite the argument that the district also provided flood protection, which concerned all residents, the Court concluded that the franchise restriction—because of the district's limited purpose and because of the disproportionate effect of its activities on landowners as a group—was not subject to strict scrutiny and was not violative of the equal protection clause.

In our view the circumstances presented in this appeal, as a matter of federal constitutional law, are more akin to those in *Kolodziejski* than in *Salyer*. In view of those two decisions, as well as the other precedent, we conclude that this case does not fall within the "special interest" exception. In this case we are not presented with a special purpose district, such as the water storage district in *Salyer*, whose principal activity is providing irrigation water for farmland, and whose activities only provide incidental benefits to the general public, such as the flood protection involved in *Salyer*. Rather, this respondent, though or-

---

1. In light of *Kolodziejski,* this Court ruled that it would be unconstitutional to restrict the voters in an election on general obligation school district bonds to landowners as authorized by Art. 1, § 20, of the Idaho Constitution. *Muench v. Paine,* 94 Idaho 12, 480 P.2d 196 (1971).

ganized as an irrigation district, is principally engaged in providing domestic water to residents of the City of Lewiston. Indeed, the respondent is located almost entirely within the boundaries of the City of Lewiston and 66% of respondent's revenue comes from tolls for domestic water. Domestic water service, of course, substantially affects not just landowners but all city residents. We do not believe that consumers of water who are not landowners are substantially less affected by or interested in the quality or cost of the domestic water service available in the city than are landowners. *See Cipriano v. City of Houma, supra.* We also find support for our conclusion in a relatively recent California decision, *Choudhry v. Free,* 17 Cal.3d 660, 131 Cal.Rptr. 654, 552 P.2d 438 (1976). *Choudhry* involved the Imperial Irrigation District—a very large and diverse operation providing water and electrical power to the mostly urban residents of several counties. The California court in *Choudhry* likewise distinguished *Salyer* and invalidated, as it applied to the Imperial Valley Irrigation District, a statute limiting candidates for director of the irrigation district to landowners.

However, we emphasize that we do not reach the question whether Art. 1, § 20, of the Idaho Constitution and I.C. § 43–111 are unconstitutional as applied to all irrigation districts within the state. We decide only that the franchise limitation as applied to this respondent in the factual circumstances related here is violative of the equal protection clause of the United States Constitution. *See Choudhry v. Free, supra* at 444. Furthermore, in view of the significant hardships to the respondent, bond holders and others which could result if our decision were given full retroactive effect, this decision will apply only prospectively. *See Hill v. Stone, supra; City of Phoenix v. Kolodziejski, supra; Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365.

Reversed.

SHEPARD, C. J., and McFADDEN, DONALDSON and BISTLINE, JJ., concur.