944 P.2d 1372

In the Matter of the Application and
Petition for Writ of Prohibition
and Declaratory Judgment.

Michael K. SIMPSON, Jerry T. Twiggs,
Maynard M. Miller, Bruce Sweeney,
Marguerite Mc Laughlin, Jim D. Kemp-
ton, Laird Noh, Wendy Jaquet, Golden
C. Linford and Reed Hanson, Petition-
ers,

v.

Pete T. CENARRUSA, Secretary of State
of the state of Idaho, Respondent,

and

Citizens for Federal Term Limits,
Respondent–Real Party in
Interest.

Docket No. 23526

Supreme Court of Idaho.
Boise, May 1997 Term.

Aug. 7, 1997.

Evans Keane, Boise; Park, Redford, Thomas & Burkett, Boise, for Petitioners. Jon M. Bauman argued.

Manweiler, Bevis & Cameron, Boise, for Respondent, Cenarrusa. Howard I. Manweiler argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur D'Alene; and Stephen J. Safranek, University of Detroit (argued), Detroit, MI, for Respondent, Citizens for Federal Term Limits. Peter C. Erbland argued.

JOHNSON, Justice.

This is a writ of prohibition and declaratory judgment case concerning the constitutionality of Proposition 4, entitled "Initiative instructing candidates for state legislature and U.S. Congress to support congressional term limits; requires statement indicating non-support on ballot." We declare that the ballot legend and pledge portions of Proposition 4 are unconstitutional, but that the instructions to members of congress and legislators do not violate Article V of the United States Constitution and are severable. Therefore, we issue a writ of prohibition, prohibiting the secretary of state from carrying out the directions contained in Proposition 4 concerning ballot legends and the pledge. We also deny petitioners attorney fees under the private attorney general doctrine.

## I.

## THE BACKGROUND

Proposition 4 was approved by the voters on November 5, 1996, and became law on November 20, 1996. See Appendix for text of Proposition 4. Section 2 of Proposition 4 consists of five subsections:

(1) a proposal for an amendment to the United States Constitution (the proposed amendment) imposing term limits on members of congress;

(2) an instruction to Idaho members of congress to use all their delegated powers to pass the proposed amendment, and prescribing the following legend be printed on the ballot for any who did not: "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS;"

(3) a pledge (the pledge) for non-incumbent congressional and legislative candidates that they use all their legislative powers to enact the proposed amendment, and if elected, will act and vote according to subsection (2) or (4), and prescribing the following legend be printed on the ballot for any who did not: "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS;"

(4) an instruction to Idaho legislators to apply to congress for a convention for proposing amendments to the United States Constitution, and prescribing the following legend be printed on the ballot for any who

did not: "DISREGARDED VOTERS' IN-STRUCTION ON TERM LIMITS;" and (5) imposing responsibility on the secretary of state to review the record of Idaho members of congress and legislators and put the following legends (the ballot legends) on the ballot: "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" next to the name of any who did not follow the instructions, and "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" next to the name of any non-incumbent congressional or legislative candidate who did not pledge to support the proposed amendment.

Subsection (5) also provides a limited right of appeal to this Court for candidates or electors who are dissatisfied with the secretary of state's decision regarding whether or not to print on the ballot one of the ballot legends. Section 4 of Proposition 4 is a severability clause, stating that if any portion of Proposition 4 is held to be invalid or unconstitutional, the remaining portion will remain in full force and effect.

Ten members of the Idaho legislature (petitioners) seek a writ of prohibition against the secretary of state barring the implementation of Proposition 4, and a declaratory ruling that Proposition 4 is unconstitutional. This Court issued an order allowing the proponents of Proposition 4, Citizens for Federal Term Limits (Citizens), the opportunity to respond to the petitioners. In this proceeding, the secretary of state and Citizens filed a joint brief, and counsel for each presented oral argument to the Court.

During oral argument, the secretary of state and Citizens asserted that petitioners do not have standing to challenge the portion of Proposition 4 that involves members of congress or non-incumbent candidates for congress. Because standing was not raised in the pleadings or in the briefs, we decline the invitation to address it. I.A.R. 35(b)(4); *see Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 93, 803 P.2d 993, 999 (1991).

■ We note preliminarily that legislation enacted by initiative and legislation enacted by the legislature "are on equal footing and are subject to the same limitations." *Wester-*

berg v. Andrus, 114 Idaho 401, 407, 757 P.2d 664, 670 (1988). Therefore, we determine the constitutionality of Proposition 4 by the same standards as we would if the legislature had enacted it.

## II.

### THE BALLOT LEGEND IN SUBSECTIONS (2) AND (4) OF SECTION 2 IS UNCONSTITUTIONAL BECAUSE IT VIOLATES THE SPEECH AND DEBATE CLAUSES OF THE IDAHO AND UNITED STATES CONSTITUTIONS.

■ Petitioners assert that the ballot legend contained in subsections (2) and (4) of section 2 of Proposition 4 violates the speech and debate clauses of the Idaho and United States Constitutions because it forces the secretary of state to "question" members of congress and legislators for speech and debate in either house. We agree.

Article III, § 7 of the Idaho Constitution states that senators and representatives shall not "be questioned in any other place" for "words uttered in debate in either house." Although this section is entitled "privilege from arrest," it also includes a shield against civil liability for legislators during the legislative session. This clause was debated at the Idaho Constitutional Convention, where Delegate Clagett from Shoshone County stated: "If there is any one place in the world where freedom of speech shall be allowed, going almost to the verge of license, it is in the legislature." 1 PROCEEDINGS AND DEBATES OF THE CONSTITUTIONAL CONVENTION OF IDAHO 1889 507 (I.W. Hart ed., 1912). Delegate Sweet from Latah County stated: "Those words are for the protection of members in debate, and it is so stated specifically, and it is simply intended in this clause, as it is in all other constitutions, to leave [legislators] free in the legislature in their debate...." *Id.* at 509.

Subsection (4) of section 2 of Proposition 4 directs the executive branch of the Idaho government, through the secretary of state, to "question" speech by legislators that is not in support of the proposed amendment.

Subsection (4) instructs the legislators to vote in favor of the application for a constitutional convention, propose the amendment, and second the proposal. Although these instructions may be followed without "speaking," they are included within the realm of protected speech. The questioning is performed through the imposition of the ballot legend on those legislators who do not act in accordance with the instruction in Proposition 4. Because the ballot legend is imposed only on those legislators who do not act in accordance with the instruction, the ballot legend is, in effect, a state-imposed consequence for certain speech in the legislature. Although private individuals have a right to engage in public debate concerning the legislative actions of legislators, the state does not have a similar right. Nor can the state subject a legislator to consequences for speech in the legislature. We conclude that the speech and debate clause of the Idaho Constitution does not allow the state to question speech and debate by Idaho legislators concerning the calling of a convention for proposing amendments to the United States Constitution.

Article I, § 6 of the United States Constitution states that members of congress "shall not be questioned in any other place" for "any speech or debate in either house." This clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch. It thus protects Members [of congress] against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972). "[I]t is apparent from the history of the clause that the privilege was not born primarily of a desire to avoid private suits . . . but rather to prevent intimidation by the executive and accountability before a possibly hostile judiciary." *United States v. Johnson,* 383 U.S. 169, 180–81, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966).

"[A]ny restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone v.*

*United States,* 493 U.S. 265, 279, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990); *see also Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). The ballot legend in subsection (2) of section 2 of Proposition 4 serves as a state-imposed consequence against members of congress for speaking a certain way. The ballot legend violates the United States Constitution's mandate that members of congress shall not be questioned for speech and debate in either house, especially by the executive branch.

### III.

### THE PLEDGE IN SUBSECTION (3) OF SECTION 2 IS UNCONSTITUTIONAL BECAUSE IT VIOLATES A NON–INCUMBENT CANDIDATE'S RIGHT TO FREE SPEECH.

■ Petitioners assert that subsection (3) of section 2 of Proposition 4 violates Article I, § 9 of the Idaho Constitution because it compels a non-incumbent candidate to take a pledge to support term limits. We agree.

Article I, § 9 states: "Every person may freely speak, write and publish on all subjects, *being responsible for the abuse of that liberty.*" (emphasis added). This Court has stated that Article 1, § 9 is worded differently than the First Amendment of the United States Constitution, and may be subject to a different analysis. *See State v. Casey,* 125 Idaho 856, 858, n. 3, 876 P.2d 138, 140, n. 3 (1994); *Gardner v. Evans,* 110 Idaho 925, 932, n. 1, 719 P.2d 1185, 1192, n. 1, *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *State v. Newman,* 108 Idaho 5, 15–16, n. 25, 696 P.2d 856, 866–67, n. 25 (1985).

Subsection (3) of section 2 of Proposition 4 instructs the state to offer the non-incumbent candidates for congress and legislature a pledge to support term limits. By offering the pledge, the state compels a candidate to speak in favor of or in opposition to the proposed amendment. A candidate who does not take the pledge will have a legend next to the candidate's name on the ballot. The pledge and the ballot legend, "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS," have the effect of forcing a non-incum-

bent candidate to take a stance on a political issue. This is an attempt by the state to control the candidate's freedom of speech by requiring the candidate to pledge to support the proposed amendment or face the ballot legend for not speaking.

We conclude that Article I, § 9 does not allow the state to restrict a candidate's right to speak freely, unless there is a flagrant abuse of that right. *Cf. McDougall v. Sheridan*, 23 Idaho 191, 234–35, 128 P. 954, 969 (1913). Proposition 4's pledge is an attempt by the state to govern political speech without showing any flagrant abuse of the right by compelling candidates to take a stance on the proposed amendment. We conclude that the pledge in subsection (3) of section 2 of Proposition 4 is unconstitutional under Article I, § 9 of the Idaho Constitution. Without the pledge, it is impossible to apply the ballot legend provision in section (3), and therefore it must also fall.

We note that petitioners also assert that subsection (3) of section 2 violates the First Amendment to the United States Constitution. Because we conclude that this subsection violates Article I, § 9 of the Idaho Constitution, we need not address this assertion.

## IV.

## THE INSTRUCTIONS TO MEMBERS OF CONGRESS AND LEGISLATORS DO NOT VIOLATE ARTICLE V OF THE UNITED STATES CONSTITUTION.

■ Petitioners assert that Proposition 4 violates Article V of the United States Constitution because it allows the voters to instruct the members of congress and legislators to amend the United States Constitution. We disagree. Standing alone, the instructions concerning the proposed amendment do not violate Article V of the United States Constitution.

Article V of the United States Constitution provides the method for proposing amendments to the United States Constitution. These methods are a proposal by two-thirds of the congress or by application of two-thirds of the states for the calling of a constitutional convention. These are the only two methods of proposing amendment. *Hawke v.*

*Smith*, 253 U.S. 221, 226, 40 S.Ct. 495, 496, 64 L.Ed. 871 (1920).

The people, through initiative and referendum process, do not have the power to ratify amendments to the United States Constitution. *Id.* "[T]he power to legislate in the enactment of the laws of a state is derived from the people of the state. But the power to ratify a proposed amendment to the federal Constitution has its source in the federal Constitution." *Id.* at 230, 40 S.Ct. at 498; *see also Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922). *Hawke* involved an amendment to Ohio's constitution that extended the referendum process to the ratification of proposed amendments to the United States Constitution. The amendment stated:

> The people also reserve to themselves the legislative power of the referendum on the action of the General Assembly ratifying any proposed amendment to the Constitution of the United States.

*Id.* at 225, 40 S.Ct. at 496. The United States Supreme Court held that the state does not have the authority to require the submission of the ratification to a referendum under the state constitution. *Id.* at 231, 40 S.Ct. at 498.

In *Kimble v. Swackhamer*, 439 U.S. 1385, 99 S.Ct. 51, 58 L.Ed.2d 225 (1978), the United States Supreme Court denied an application for interim relief against the placing of a referendum question on the Nevada ballot. Nevada had enacted a statute that required the submission of an advisory question to the registered voters as to whether the Equal Rights Amendment should be ratified by the legislature. The Supreme Court stated that it did not see any "constitutional obstacle to a nonbinding, advisory referendum of this sort." *Id.* at 1388, 99 S.Ct. at 54.

Without the ballot legends, Proposition 4 is more similar to *Kimble* than *Hawke* because it is a non-binding, advisory initiative. Proposition 4's instruction does not require the voters to determine whether to ratify the proposed amendment. Instead, it merely instructs Idaho members of congress and legislators to use their legislative powers to pass the proposed amendment. Members of congress and legislators are not compelled to support the proposed amendment; they are

**614**

free to act as they wish. Proposition 4 does not eliminate the Article V requirements for proposing a constitutional amendment. The proposed amendment must still go through the constitutionally prescribed process in order to be ratified. Proposition 4's instructions are not an attempt to allow the voters to ratify a federal constitutional amendment.

In addition, the Idaho Constitution, Article I, § 10, gives the people the right to instruct their representatives and to petition the legislature for the redress of grievances. This section enables voters to instruct the Idaho members of congress and legislators. The instructions contained in Proposition 4 do not violate Article V of the United States Constitution.

## V.

### SEVERABILITY OF THE BALLOT LEGENDS.

 Section 4 of Proposition 4 states that if any portion of Proposition 4 "is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions ... shall not be affected, but shall remain in full force and effect." This Court has stated that when the unconstitutional portion of a statute is not integral or indispensable, it will recognize and give effect to a severability clause. *Boundary Backpackers v. Boundary County*, 128 Idaho 371, 378, 913 P.2d 1141, 1148 (1996). We conclude that the ballot legends and the nonincumbent candidate pledge are not integral or indispensable, and, therefore, the remaining portions of subsections (2) through (5) of section 2 of Proposition 4 may remain in effect. Subsection (1) (the purpose section) of section 2 and section 3 (automatic repeal) also remain intact.

## VI.

### THE PETITIONERS ARE NOT ENTITLED TO ATTORNEY FEES UNDER THE PRIVATE ATTORNEY GENERAL DOCTRINE.

Petitioners argue that they are entitled to attorney fees under the private attorney general doctrine. We disagree.

 The private attorney general doctrine allows an award of attorney fees based

on three factors: (1) the strength or societal importance of the public policy indicated by the litigation; (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff; and (3) the number of people standing to benefit from the decision. *Hellar v. Cenarrusa*, 106 Idaho 571, 577-78, 682 P.2d 524, 530-31 (1984). In this case, the petitioners have failed to show that it was necessary to bring a private action. There is no evidence that the state attorney general was given the opportunity to bring this suit and refused.

## VII.

### CONCLUSION

We declare that the ballot legend in subsections (2) and (4) of section 2 of Proposition 4 violates the speech and debate clauses of the Idaho and United States Constitutions. We also declare that the pledge in subsection (3) of section 2 of Proposition 4 violates the right to free speech guaranteed by the Idaho Constitution, and that it is impossible to apply the ballot legend in subsection (3) without the pledge. When this opinion becomes final, we will issue a writ of prohibition, prohibiting the secretary of state from carrying out the directions contained in subsections (2), (3), (4), and (5) of section 2 of Proposition 4. We also declare that the instruction portions of Proposition 4 do not violate Article V of the United States Constitution, and that the portions of Proposition 4 we have not ruled are unconstitutional or impossible to apply are severable and remain intact.

Because of the mixed result, we award no costs.

We find no basis to award petitioners attorney fees.

TROUT, C.J., and McDEVITT, J., concur.

SILAK, Justice, concurring and concurring in the result.

I concur fully with Parts I, II, IV, V, VI, and VII of the court's opinion. I also agree with the result reached by the majority in Part III. However, for the following reasons, I would hold that rather than infringing on a non-incumbent candidate's right to free speech, and in addition to violating the speech and debate clause of the Idaho Con-

stitution, the ballot legends required by Proposition 4 infringe upon the people's right to vote under the Idaho Constitution.

## I.

### THE RIGHT TO VOTE IS A FUNDAMENTAL RIGHT UNDER THE IDAHO CONSTITUTION

The right to vote is a right we hold dear in Idaho. The Idaho Constitution contains a specific section in its declaration of rights which states that "[n]o power, civil or military, shall at any time interfere with or prevent the free and lawful exercise of the right of suffrage." IDAHO CONST., art. I, § 19. Further, an entire article of the Idaho Constitution is dedicated to suffrage and elections. IDAHO CONST., art. VI. Thus, it is obvious that the framers of the Idaho Constitution recognized voting as an important right.

We have previously recognized that under the federal constitution, the right to vote is fundamental. *See Johnson v. Lewiston Orchards Irr. Dist.,* 99 Idaho 501, 503, 584 P.2d 646, 648 (1978) (citing United States Supreme Court cases and holding that "[t]hese cases hold that the right to vote is a fundamental political right ..."); *Thompson v. Hagan,* 96 Idaho 19, 21, 523 P.2d 1365, 1367 (1974) (setting forth the test to be used "[i]f the classification involves a fundamental right such as the right to vote,..").

This Court has stated that a right is fundamental under the Idaho Constitution if expressed as a positive right, or if it is implicit in Idaho's concept of ordered liberty. *Idaho Sch. for Equal. Educ. Opportunity v. Evans,* 123 Idaho 573, 581–82, 850 P.2d 724, 732–33 (1993). Given that the Idaho Constitution specifically guarantees the right of suffrage, I would hold that voting is a fundamental right under the Idaho Constitution.

## II.

### IF A FUNDAMENTAL RIGHT IS AT ISSUE, THE STANDARD OF REVIEW FOR A LAW OR ACTION WHICH AFFECTS THAT RIGHT IS STRICT SCRUTINY.

If a fundamental right is at issue, a law or action infringing on that right must with-

stand strict scrutiny. *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990). *See also Illinois St. Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). Under the strict scrutiny test, the state must justify the infringement on the fundamental interest by showing that it is necessary to promote a compelling government interest. *See State v. Missamore,* 119 Idaho 27, 33, 803 P.2d 528, 534 (1990).

The respondents correctly point out that the United States Supreme Court has held that the strict scrutiny standard of review is not always appropriate when reviewing voting issues. *Burdick v. Takushi,* 504 U.S. 428, 432–33, 112 S.Ct. 2059, 2062–63, 119 L.Ed.2d 245 (1992). The respondents further note that the "government must play an active role in structuring elections." *Id.* at 433, 112 S.Ct. at 2063. However, the facts in *Burdick* distinguish the case and its more deferential standard of review from the one before us today, for several reasons. First, that case dealt with the United States Constitution, not the Idaho Constitution. Second, that case addressed time, place and manner restrictions on voting, which are subject to a lesser standard of scrutiny than other types of voting restrictions. Unlike the prohibition against write-in voting at issue in *Burdick,* a manner restriction, the issue before us today deals with a legend printed on the ballot itself, by the state. Thus, it is not a time, place or manner restriction, and I would hold that the state must show that the ballot legend's effect on the right to vote is necessary to promote a compelling government interest.

## III.

### THE BALLOT LEGENDS MANDATED BY PROPOSITION FOUR INFRINGE UPON VOTERS' RIGHTS, CANNOT WITHSTAND STRICT SCRUTINY, AND THUS UNCONSTITUTIONALLY INFRINGE ON THE RIGHT TO VOTE UNDER THE IDAHO CONSTITUTION.

The provision at issue in this case does not prevent a person or group from voting, but

instead dictates the way the ballot itself is written. However, a recent United States Supreme Court case indicated that protection of the integrity of the ballot also protects the right to vote. In *Timmons v. Twin Cities Area New Party,* —— U.S. ——, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997), the Twin Cities Area New Party (the Party) argued that Minnesota's ban on fusion (or multi-party) candidates was unconstitutional. In part, the Party argued that the ban interfered with the Party's right to communicate information to the voters via the ballot. In response, the Court stated that:

> [w]e are unpersuaded, however, by the Party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as fora for political expression.

—— U.S. at ——, 117 S.Ct. at 1372. The same reasoning applies here. If ballots could be used to convey a pejorative message regarding a candidate's views on any topic, the ballot would be transformed from an essentially objective means of selecting our leaders to a state-sanctioned campaign pamphlet.

It might be argued that the ballot legends here would affect the candidates only, and not the people's right to vote. However, the legends will interfere with the voters' right to cast their ballots, free from government interference. As the United States Supreme Court has stated, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

The United States Supreme Court recently held that a political party does not have a right to use the ballot to send a particular message. *Timmons,* —— U.S. at ——, 117 S.Ct. at 1372. If a political party, not an official arm of the state, does not have the right to send a particularized message on the ballot, the state itself should not have the ability to do so. To allow the state to send such a message would amount to the State

being permitted to endorse a candidate. While, as the United States Supreme Court noted, "States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials," *Timmons,* —— U.S. at ——, 117 S.Ct. at 1373, that right does not include placing pejorative messages regarding a candidate on the ballot. It also does not include the right to effectively instruct voters which issue, *i.e.* term limits, is most important, and which candidates have, in the state's opinion, supported that issue.

The respondents have argued that the ballot already contains information about a candidate, including party designation, residence, and whether or not the candidate is an incumbent. When considering a term limits initiative very similar to the one before us today, the Arkansas Supreme Court eloquently rebutted the contention that the ballot language portion of the initiative was simply a means of conveying information to the voters when it stated:

> Although the proposed [term limits initiative] does not compel such action by the legislature on threat of loss of salary, it is nonetheless binding on the legislators in an extortive manner as failure to heed the amendment's instructions will result in their threatened potential political deaths. Contrary to what Respondent and Intervenors contend, the proposed duties to be given to the Secretary of State by [the term limits initiative] are not merely ministerial; rather, *they amount to substantive penalties that are equivalent to an officially sanctioned recommendation by the State of Arkansas not to vote for such candidates because they disregarded the instructions and wishes of the voters.* If, as Respondent and Intervenors assert, the proposed measure is merely a nonbinding attempt to communicate the desire of the people for term limits, then their remedy is to voice their desires at the polls by voting for candidates who share their beliefs.

*Donovan v. Priest,* 326 Ark. 353, 931 S.W.2d 119, 127–28 (1996) (emphasis added).

The respondents further argued that the State has a strong interest in ensuring that voters are informed, and that the State has a right to regulate elections. The State does indeed have those interests, but the argument that those interests permit the ballot legends mandated by Proposition 4 is unpersuasive, for several reasons.

First, the information which Proposition 4 seeks to place on the ballot is already available to the public. The vote a state representative casts on a particular issue is a matter of public record, and a non-incumbent's stance on an issue may be ascertained by consulting the candidate's campaign literature, by reading media coverage of the candidacy, or by other forms of research. Candidates spend a great deal of time and money in an effort to make their views known to the public. Thus, while the state does have a legitimate interest in "fostering informed and educated expressions of the popular will in a general election," *Anderson v. Celebrezze*, 460 U.S. 780, 796, 103 S.Ct. 1564, 1574, 75 L.Ed.2d 547 (1983), that interest does not give the State unfettered discretion in determining how to run an election, or how to ensure and informed electorate. *See Anderson*, 460 U.S. at 797–98, 103 S.Ct. at 1574–75 (holding that modern communication, the large amount of money spent on campaigns, and voter education make it unnecessary for a state to require state residency for one year, or to require a candidate to register by the end of March for the November election.). When considering a Nebraska initiative very similar to Proposition 4, the United States District Court for the District of Nebraska stated this rationale quite clearly:

> [p]ublic debate, news interviews, reports on prior voting records, advertisements by interest groups, and public statements by opponents provide a broad education on the issue. The ballot label in this case, however, acts more as a sound bite than an educational tool. Although elections today are filled with similarly brief info-mercials aimed at providing fast answers to difficult questions, making the state part of this misleading practice at "the most crucial stage in the electoral process—the instant before the vote is cast—" only further demeans the election process.

*Duggan v. Moore*, No. 4:CV 97–3074 at 8 (D.Neb. May 15, 1997).

Second, the information currently on the ballot, such as party designation, residence, and whether the candidate is an incumbent, is objective information which is easily ascertainable. In contrast, the ballot legends set forth in Proposition 4 are subjective and pejorative. Allowing such statements on the ballot "would undermine the ballot's purpose by transforming it from a means of choosing candidates to a billboard for political advertising." *Timmons*, —— U.S. at ——, 117 S.Ct. at 1373. *See Duggan*, No. 4:CV 97–3074 at 7 (noting that the legend requirement in the Nebraska term limits initiative "does place a negatively-worded phrase next to a candidate's name based on a single issue, and only opponents of the term limits issue are so subjected to this labeling.... Such a labeling hardly qualifies as 'evenhanded' or 'nondiscriminatory'."); *The League of Women Voters of Maine v. Gwadosky*, 966 F.Supp. 52, 59 (D.Maine 1997) (also considering an initiative very similar to Idaho's and holding that "[t]he ballot labels drafted by the State are certainly not neutral. They do not simply state that the candidate is 'for term limits' or 'against term limits'.... They are brands of disapproval by the State....").

Third, allowing a state official to place subjective, pejorative comments on the ballot, and to determine the circumstances under which such comments should be placed is particularly problematic in Idaho, given Idaho Constitution Art. I, § 19's command that "[n]o power, civil or military, shall at any time interfere with or prevent the free and lawful exercise of the right of suffrage." We have held that this section does not prevent the State from reasonably regulating the electoral process. *Adams v. Lansdon*, 18 Idaho 483, 490, 110 P. 280, 282 (1910). However, we further stated that "[t]hose provisions evidently refer to officers, civil or military, being about the polls to meddle with or intimidate electors, and thus to interfere with and prevent them from the free and lawful exercise of the right of suffrage." *Id.* at 491, 110 P. at 282. Proposition 4 does not man-

date that state officers be physically present at the polls to emphasize to voters that a candidate has, in the Secretary of State's view, failed to support term limits. Nevertheless, the fact that the state determines whether the legend appears on the ballot, and then prints the ballot, has the same practical effect as if an officer were present and conveying that information in person.

Fourth, I am concerned that if we permit the legends mandated by Proposition 4 on the ballot, it will open the gates to a flood of similar legends on a variety of topics. I envision a ballot in which next to each candidate's name, a dozen or more legends appear, purportedly stating each candidate's views on a variety of controversial issues. A study done in 1957 concluded that one of the most serious factors impacting a voter's ability to make a thoughtful, conscious choice in the polling place is time. The authors noted that

> [e]specially in places where voting machines are used, the voter may be hard pressed to register all of his choices in the time allotted.... If a voter has difficulty in perceiving and manipulating the ballot, he may not make the effort needed to properly mark the ballot for a candidate whom he has only a slight reason for preferring over the others.

HENRY M. BAIN, JR. AND DONALD S. HECOCK, BALLOT POSITION AND VOTER'S CHOICE: THE ARRANGEMENT OF NAMES ON THE BALLOT AND ITS EFFECT ON THE VOTER, 42–43 (1957). If the ballot becomes too long, or becomes crowded with information regarding each candidate, there is a risk that people will either vote haphazardly, or will not vote at all.

The proponents of Proposition 4 have failed to show that the ballot legends are necessary to further a compelling state interest. While the state does have a compelling interest in protecting the integrity of the ballot, and in regulating elections, the ballot legend of Proposition 4 would actually undermine the ballot's integrity, and impermissibly infringe on the fundamental right to vote under the Idaho Constitution.

## IV.

## CONCLUSION

I concur in full in Parts I, II, IV, V, VI, and VII of the Court's opinion. However, I concur in the result only of Part III, and would hold that the ballot legends requirement of Proposition 4 violates the fundamental right to vote under the Idaho Constitution.

SCHROEDER, Justice, concurring in result.

I concur in the reasoning and result of the Court's opinion, except the determination that the Court will not address the question of standing since that issue was not raised in the pleadings or the briefs. I would hold that the question of standing is jurisdictional and cannot be waived by the parties but that the petitioners do have standing to assert the claims.

## APPENDIX

## WARNING

It is a felony for anyone to sign any initiative or referendum petition with any name other than his own, or to knowingly sign his name more than once for the measure, or to sign such petition when he is not a legal voter.

## INITIATIVE PETITION

To the Honorable Pete T. Cenarrusa, Secretary of State of the State of Idaho:

"We, the undersigned citizens and legal voters of the State of Idaho, respectfully demand that the following proposed law, to-wit:

## SHORT TITLE

**Initiative instructing candidates for state legislature and U.S. Congress to support congressional term limits; requires statement indicating non-support on ballot.**

## LONG TITLE

Initiative instructing Idaho congressional delegation to support amendment to U.S. Constitution limiting terms of U.S. Representative to three, and U.S. Senator to two

terms. If member of Idaho congressional delegation fails to perform certain acts supporting congressional term limits amendment, the phrase "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" would appear adjacent to their name on ballot. The initiative allows candidates for U.S. Congress to sign a pledge to support congressional term limits amendment, and the phrase "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" would appear adjacent to the candidate's name on ballot if they fail to sign. The initiative instructs state legislators to make application to U.S. Congress for a convention proposing amendments to the U.S. Constitution. If a state legislator fails to perform certain acts in support of application, the phrase "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" would appear adjacent to legislator's name on ballot. The initiative requires Secretary of State to determine whether statement should appear on ballot, and candidates and electors can appeal the decision to the Idaho Supreme Court. If congressional term limits amendment is before states for ratification or becomes part of U.S. Constitution, no statement would appear on ballot and act would be repealed.

Be It Enacted by the People of the State of Idaho:

**Section 1: This act shall be known as and may be cited as The Congressional Term Limits Act of 1996.**

**Section 2: That Chapter 9, Title 34, Idaho Code, be, and the same is hereby amended by the addition thereto of a NEW SECTION, to be known and designated as Section 34–907A, Idaho Code, and to read as follows:**

34–907A. Information on Legislators' support for Congressional Term Limits Amendment.

**(1) Purpose—Constitutional Amendment.—**

It is the purpose and intent in enacting this legislation to secure the adoption of the following congressional Term Limits Amendment under the provisions of Article 5 of the United States Constitution by informing voters of acts and omissions by candidates for State and Federal legislative office with respect to said constitutional amendment:

Section A. No person shall serve in the office of the United States Representative for more than three (3) terms, but upon ratification no person who has held the office of United States Representative or who then holds the office shall serve for more than two additional terms.

Section B. No person shell serve in the office of the United States Senator for more than two (2) terms, but upon ratification, no person who has held the office of the United States Senator or who then holds the office shall serve for more than one additional term.

Section C. This article shall have no time limit within which it must be ratified to become operative upon the ratification of the legislatures of three-fourths of the several States.

**(2) Ballot Information for Members of Congress.—**

(a) Each member of the Idaho congressional delegation is hereby instructed to use all of his or her delegated powers to pass the Congressional Term Limits Amendment set forth above. All primary, general, and special election ballots shall have the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" printed adjacent to the name of any U.S. Representative or U.S. Senator who did any one or more of the following acts:

1. failed to vote in favor of the proposed Congressional Term Limits Amendment set forth above when brought to a vote; or

2. failed to second the proposed Congressional Term Limits Amendment set forth above if it lacked for a second before any proceeding of the legislative body; or

3. failed to propose or otherwise bring to a vote of the full legislative body the proposed Congressional Term Limits Amendment set forth above if it otherwise lacked a legislator who so proposed or brought to

a vote of the full legislative body the proposed Congressional Term Limits Amendment set forth above; or

4. failed to vote in favor of all votes bringing the proposed Congressional Term Limits Amendment set forth above before any committee or subcommittee upon which he or she served in the respective house; or

5. failed to vote against or reject any attempt to delay, table, or otherwise prevent a vote by the full legislative body of the proposed Congressional Term Limits Amendment set forth above; or

6. failed to vote against any term limits proposal with longer limits than the proposed Congressional Term Limits Amendment set forth above; or

7. sponsored or co-sponsored any proposed Constitutional amendment or law that proposes term limits with longer limits than those in the proposed Congressional Term Limits Amendment set forth above; or

8. failed to ensure that all votes on the proposed Congressional Term Limits Amendment set forth above were recorded and made available to the public.

(b) The information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" shall not appear adjacent to the name of a candidate for Congress if the Congressional Term Limits Amendment set forth above is before the States for ratification or has become part of the U.S. Constitution.

**(3) Ballot Information on Term Limit Pledge for Non–Incumbents.—**

(a) Each non-incumbent candidate for the office of U.S. Representative and U.S. Senator, state representative or state senator shall be offered the opportunity to sign a "Term Limits Pledge" each time he or she files as a candidate for such an office. A candidate who declines to sign the "Term Limits Pledge" shall have the information "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" printed adjacent to his or her name on the election ballot.

(b) The "Term Limit Pledge" shall be offered to every non-incumbent candidate for U.S. Senator, U.S. Representative, state senator, or state representative each time he or she files for candidacy until such time as the U.S. Constitution has been amended to limit U.S. Senators to two terms in office and U.S. Representatives to three terms in office.

(c) The "Term Limits Pledge" that each non-incumbent candidate set forth above shall be offered is as follows:

"I support congressional term limits and pledge to use all of my legislative powers to enact the proposed Congressional Term Limits Amendment set forth in the Congressional Term Limits Act of 1996. If elected, I pledge to act and vote in such a way that the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" will not appear next to my name."

The pledge form will provide a space for the signature of the candidate and the date signed.

(d) The information "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" shall not appear adjacent to the names of non-incumbent candidates for U.S. Congress or the Idaho Legislature if the Congressional Term Limits Amendment set forth above has become part of the United States Constitution.

**(4) Ballot Information for State Legislators.—**

(a) Since it is the purpose and intent of this act to secure the Congressional Term Limit Amendment, the legislature of the State of Idaho is specifically instructed to support the following application to Congress:

"We, the People and Legislature of the State of Idaho, due to our desire to establish term limits on the Congress of the United States, hereby make application to Congress, pursuant to our power under Article 5 of the United States Constitution, to call a convention for proposing amendments to the Constitution."

(b) At each election for the office of state legislator, the ballot shall inform voters regarding any incumbent and non-incum-

bent candidate's failure to support the Congressional Term Limits Amendment proposed in Section 2.(1) above. All primary, general, and special election ballots shall have the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" printed adjacent to the name of any state senator or representative who did any one or more of the following acts::

1. failed to vote in favor of the application set forth above when brought to a vote; or

2. failed to second the application set forth above if it lacked for a second; or

3. failed to vote in favor of all votes bringing the application set forth above before any committee, subcommittee or legislative council upon which he or she served in the respective house; or

4. failed to propose or otherwise bring to a vote of the full legislative body the application set forth above if it otherwise lacked a legislator who so proposed or brought to a vote of the full legislative body the application set forth above; or

5. failed to vote against any attempt to delay, table, or otherwise prevent a vote by the full legislative body of the application set forth above; or

6. failed in any way to ensure that all votes on the application set forth above were recorded and made available to the public; or

7. failed to vote against any change, addition, or modification to the application set forth above; or

8. failed to vote in favor of the amendment set forth above when it was sent to the States for ratification; or

9. failed to vote against any term limits amendment with longer limits than the proposed amendment set forth above, if such an amendment was sent to the States for ratification.

(c) The information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" as required by any of subsections (1) through (7) shall not appear adjacent to the names of candidates for the state legis-lature if the State of Idaho has made the application to Congress for a convention for proposing amendments to the U.S. Constitution pursuant to this Act and such application has not been withdrawn.

(d) The information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" as required by either of subsections (8) or (9), shall not appear adjacent to the names of candidates for the state legislature if the Congressional Term Limits Amendment set forth above has been submitted to the States for ratification and ratified by the Idaho Legislature, or the proposed Congressional Term Limits Amendment set forth above has become part of the U.S. Constitution.

**(5) Ballot Information Designation—Determination by the Secretary of State.—**

(a) The Secretary of State shall be responsible to make an accurate determination from any official report or record of Congress or the Legislature or any other report deemed reliable by the Secretary Of State as to whether a candidate for the state or federal legislature shall have placed adjacent to his or her name on the election ballot the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS."

(b) The Secretary of State shall consider timely submitted public comments prior to making the determination required in subsection (a) of this section.

(c) The Secretary of State, in accordance with subsection (a) of this section shall determine and declare what information, if any, shall appear adjacent to the names of each incumbent state and federal legislator if he or she was to be a candidate in the next general election. In the case of U.S. Representatives and U.S. Senators, this determination and declaration shall be made in a fashion necessary to ensure orderly printing of primary and general election ballots with allowance made for all legal action provided in sections (e), (f), and (g), below, and shall be based upon each member of Congress's action during

their current term of office and any action taken in any concluded term, if such action was taken after the determination and declaration was made by the Secretary of State in a previous election. In the case of incumbent state legislators, this determination and declaration shall be made not later than thirty (30) days after the end of the regular session following each general election, and shall be based upon legislative action in the previous regular session and any action taken in a previous session, if such action was taken after the determination and declaration was made by the Secretary of State in the previous election. The Secretary of State shall provide official notification to the incumbents by certified mail and to the public by official media statement, or legal publication.

(d) The Secretary of State shall, determine and declare what information, if any, shall appear adjacent to the names of non-incumbent candidates for state and federal legislator, not later than five (5) days after the deadline for filing for the office. The Secretary of State shall provide official notification to the candidate by certified mail and to the public by official media statement or legal publication.

(e) If the Secretary of State makes the determination that the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" shall not be placed on the ballot adjacent to the name of a candidate for senator or representative for state or federal office, any elector may appeal such decision within five (5) days after official public notification of the determination by the Secretary of State to the Idaho Supreme Court as an original action or shall waive any right to appeal such decision; in which case the burden of proof shall be upon the Secretary of State, relying upon information provided by the candidate, to demonstrate by clear and convincing evidence that the candidate has met the requirements set forth in this Act and therefore should not have the information "DISREGARDED VOTERS' INSTRUC-

TION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" printed on the ballot adjacent to the candidate's name.

(f) If the Secretary of State determines that the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" shall be placed on the ballot adjacent to a candidate's name, the candidate may appeal such decision within five (5) days after receipt of notification to the Idaho Supreme Court as an original action or shall waive any right to appeal such decision; in which case the burden of proof shall be upon the candidate to demonstrate by clear and convincing evidence that he or she should not have the information "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" printed on the ballot adjacent to the candidate's name.

(g) The Idaho Supreme Court shall hear the appeals provided for in sections (e) and (f) on an expedited basis and shall issue decisions not later than two days prior to the date by which the Secretary of State must order ballots printed to comply with election laws.

## Section 3: Automatic Repeal.

At such time as the Congressional Term Limits Amendment set forth in Section 2 or an amendment with no longer terms has become part of the U.S. Constitution, this Act automatically shall be repealed.

## Section 4: Severability.

If any portion, clause, or phrase of this Act is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, the remaining portions, clauses, and phrases shall not be affected, but shall remain in full force and effect.